UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BRET MICHAELS and LAST CHILD
PRODUCTIONS, INC.,

                        Plaintiffs,

  -v-                                               5:10-CV-989

MICHAEL S. BANKS; ALOHA EVENTS, LLC;
and JENNIFER KINGSTON;

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

BIENSTOCK & MICHAEL, P.C.             RONALD S. BIENSTOCK, ESQ.
Attorneys for Plaintiffs                     BRENT M. DAVIS, ESQ.
Continental Plaza
411 Hackensack Avenue, 7th Floor
Hackensack, NY 07601

MICHAEL S. BANKS
Defendant pro se
5 Oriole Path
Liverpool, NY 13090

JENNIFER KINGSTON
Defendant pro se
5953 E. Taft Road
A-4
North Syracuse, NY 13212

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiffs Bret Michaels ("Michaels") and Last Child Productions, Inc. ("Last Child")

(collectively "plaintiffs") move for summary judgment. Pro se defendants Michael S. Banks

("Banks") and Jennifer Kingston ("Kingston") (collectively "defendants") oppose. Plaintiffs replied. The motion was taken on submission without oral argument.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.

Prior to March 31, 2010, Banks and non-party Patrick LaPage ("LaPage") agreed to form a limited liability company, Aloha Events, LLC ("Aloha LLC"), to promote a concert series over the summer of 2010. On March 31, 2010, the Articles of Organization for Aloha LLC were filed with the New York Secretary of State. Banks and LaPage each owned fifty percent of Aloha LLC as of March 31, 2010. Aloha LLC's Operating Agreement required a majority vote for all actions of the company.

On April 22, 2010, Banks removed LaPage as a member of Aloha LLC. According to Banks, he did so because LaPage failed to respond to his attempts to complete the organization of the company. Banks interpreted this failure to respond as abandoning the company. However, Banks' removal of LaPage as a member of Aloha LLC was done unilaterally, without written notice to LaPage prior to the membership meeting and without a majority vote to take such action. Banks also transferred LaPage's ownership interest in Aloha LLC to himself and Kingston, again without prior written notice to LaPage and without a majority vote to do so. This transfer resulted in Banks having a ninety percent ownership and Kingston having ten percent.

Banks wrote a check to himself from the Aloha LLC account to reimburse his initial capital contribution to the company. He deposited child support payment arrears into Aloha LLC's bank account. He used Aloha LLC's debit card to purchase a gift for his granddaughter, but, according to him he replaced those funds. Banks made two payments

for his health insurance from Aloha LLC's account.  He also infused personal funds into Aloha LLC, as did Kingston on at least two occasions.  According to Banks, the personal funds he put into Aloha LLC constituted a loan to the company.  However, there are no loan documents.

Kingston used her personally-owned computer to conduct Aloha LLC business. Banks used the same home office to conduct Aloha LLC business as well as that of his two other businesses, Alpha Realty Group ("Alpha Realty") and Aloha Energy.  The office had a single-line telephone, which was used for all Banks' businesses.  Banks primarily used a cell phone in Alpha Realty's name to conduct Aloha LLC business.  He also used the cell phone to conduct Alpha Realty business.  Banks transferred money from Aloha LLC's account to Alpha Realty's account to pay the cell phone bill.

According to Banks, he and Kingston acted as members of the corporation.  Aloha LLC had liability insurance and a mailing office.  Banks states that he used Alpha Realty's office equipment only sparingly for Aloha LLC's business, and it was in Aloha LLC's best interest to use the equipment rather than incurring the expense of purchasing such equipment for Aloha LLC's sole use.

Aloha LLC and plaintiffs entered into a contract under which Michaels would perform at a concert in Syracuse, New York, on August 5, 2010.  Pursuant to the contract, Aloha LLC was to pay $100,000 to plaintiffs for the concert, as follows:  $10,000 by June 11, 2010; $40,000 by July 16, 2010; and $50,000 no later than one hour prior to the concert.  Aloha LLC paid defendants only $5,000 total.  The contract permitted plaintiffs to cancel the contract if the required payments were not made.

According to Banks, he was in contact with plaintiffs regarding the shortfall in payments. He notified them that he was attempting to secure funding for the concert but had been unable to do so. Further, he requested that the concert be rescheduled after he secured further funding, but was told that the concert would not be rescheduled until Aloha LLC paid the amounts due under the contract.

Michaels arrived at the concert site on August 5, 2010, to find no stage, no sound equipment, and no lighting equipment. According to defendants, the equipment was at the site but no sound and lighting company was hired because they did not believe the concert would take place. Defendants admit that Aloha LLC breached the contract.[1]

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

---

[1] A default judgment in favor of plaintiffs and against defendant Aloha LLC in the amount of $95,000.00 was entered on August 12, 2011.

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

**B. Analysis**

Because the breached contract for which plaintiffs seek damages was between plaintiffs and a corporate entity, Aloha LLC, Banks and Kingston will be liable only if the Aloha LLC corporate veil is pierced, making them individually responsible.

A corporate veil may be pierced where it is established that (1) "'the owner exercised complete domination over the corporation with respect to the transaction at issue,'" and (2) "'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (quoting American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)). While there is a presumption that the corporate entity and not its shareholders is held liable for corporate acts, the corporate veil may be pierced and shareholders held liable "'either upon a showing of fraud or upon complete control by the dominating [entity] that leads to a wrong against third parties.'" Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir.1997) (quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 138 (2d Cir. 1991)). Thus, a showing of

complete control, that is, a shareholder acting as the alter ego of the corporation, standing alone, is insufficient to pierce the corporate veil. Id. at 1053 (citing Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141-42 (1993)). Rather, that control must have been used to perpetrate "fraud or other wrong that resulted in unjust loss or injury." See id. (citing Wm. Passalacqua Builders, Inc., 933 F.2d at 138).

Multiple factors are considered in determining whether domination and control is established, such as the following:

> "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities."

MAG Portfolio Consultant, 268 F.3d. at 63-64 (quoting Freeman, 119 F.3d at 1053). An individual controls a corporation to the extent that it may be considered an alter ego when the individual conducts business for personal purposes, rather than to further the business of the corporation. Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980) (citing Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979). Further, the domination must have "occurred for the purpose of committing a wrong." MAG Portfolio Consultant, 268 F.3d at 64. In other words, the individual must have "used his control over [the corporation] to commit a wrongful or unjust act" toward the party seeking to hold the individual liable for the corporation's actions. Freeman, 119 F.3d at 1053-54.

There is no allegation of fraud in this case. Therefore, in order to prevail on their motion for summary judgment, plaintiffs must establish that no genuine issues of fact remain

for trial as to (1) defendants' dominion and control over Aloha LLC, and (2) whether Banks and Kingston controlled Aloha LLC in order to unjustly or wrongfully harm plaintiffs.

Without notifying LaPage of a membership meeting and without holding a vote of the members, Banks removed LaPage as a member of Aloha LLC.  Banks also assigned to himself a portion of LaPage's ownership interest in Aloha LLC, and assigned the remainder to Kingston.  Thus, he disregarded corporate formalities.  It could be said that Aloha LLC was undercapitalized, since it had insufficient funds to make the payments to plaintiffs required by the contract.  Additionally, he used his home office and Alpha Realty's office equipment such as a cell phone and computers to conduct the business of Aloha LLC as well as his unincorporated realty and energy companies.  There was some intermingling of personal and corporate funds, such as use of a corporate debit card to purchase a family gift, infusion of personal funds to pay Aloha LLC debts, and use of corporate funds to pay health insurance premiums.  These factors demonstrate that Banks, and Kingston to a lesser extent, exercised some dominion and control over Aloha LLC.  However, whether the dominion and control defendants exercised over Aloha LLC was so complete as to justify overriding the presumption that protects corporate owners from liability, in face of the strong public policy underlying the presumption, is far from clear.  See Wm. Passalacqua Builders, Inc., 933 F.2d at 139 (stating that it is for the jury to "decide whether—considering the totality of the evidence—the policy behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation" (citations omitted)).

Additionally, no facts have been set forth establishing that Banks or Kingston exerted control over Aloha LLC in order to further their personal business. Rather, there is no question that they acted in order to further the purpose of the corporation—to promote concerts. There are also no facts to support a showing that Banks and/or Kingston exercised control over Aloha LLC in order to commit some injustice or wrong against plaintiffs. To the contrary, much of the intermingling of funds consisted of the infusion of personal funds to the corporation first to make the concert series a success and second to pay the debts incurred by the corporation when the Michaels concert did not occur.

Moreover, the facts do not establish that Banks' and Kingston's individual actions on behalf of Aloha LLC were wrongful or unjust toward plaintiffs. It seems clear that defendants were doing whatever was possible to make the Michaels concert happen. Further, plaintiffs were well aware that the concert promoter was a corporation, not individuals. Plaintiffs had full knowledge that of the first down payment of $10,000, required by the contract to be paid by June 11, 2010, Aloha LLC only paid $5,000. Aloha LLC never paid the other $5,000 initial down payment, and did not pay any of the $40,000 payment required by July 16, 2010. Banks was in contact with plaintiffs and attempted to reschedule the concert for a later time after he obtained further funding. Plaintiffs refused to reschedule until Aloha LLC paid the required down payment. Plaintiffs were well aware of the monetary shortfalls, yet arrived on the appointed day of the concert ready to perform. Although permitted to cancel the concert for <u>any</u> failure to make a required payment, plaintiffs did not do so in spite of Aloha LLC's failure as of June 11, 2010, to make the required $5,000 payment, and, as of July 16, 2010, failure to pay the $45,000 then owed. Plaintiffs knew they had contracted with a corporation that continually failed to meet its monetary obligations under the contract but did nothing

(such as cancel the concert) to mitigate its losses.  Plaintiffs have a long way to go to establish that any actions by Banks and Kingston were unjust toward them.  See Favour Mind Ltd. v. Pacific Shores, Inc., No. 98 Civ. 7038, 2004 WL 97649, at *6-7 (S.D.N.Y. Jan. 20, 2004) (finding that plaintiff continuing to do business with corporation despite full awareness of poor financial ranking, operating losses, and initial undercapitalization indicated plaintiff's assumption of the risk of doing business with the corporation and precluding piercing the corporate veil).

## IV.  CONCLUSION

While plaintiffs have established that certain facts are undisputed, those facts fail to meet the showing required to pierce the corporate veil.  In other words, the undisputed facts are insufficient to entitle plaintiffs to judgment as a matter of law.

Accordingly, it is

ORDERED that plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  November 1, 2012
        Utica, New York.